SCANNED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MARY ANN BOUDREAU,
Plaintiff

v.

BACOU USA, INC. AND
PRUDENTIAL INSURANCE
COMPANY,
Defendants

CIVIL ACTION NO.: 05-154 S

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Court's order of May 26, 2005, and Fed.R.Civ.P. 56(c), defendants The Prudential Insurance Company of America and Bacou, USA, Inc. (hereinafter collectively referred to as "Prudential") requests that the Court grants Prudential's Motion for Summary Judgment.

In support of this motion, Prudential states that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. In further support of this motion, Prudential relies upon its Memorandum of the Defendants in Support of its Motion for Summary Judgment.

Wherefore, Prudential requests that the Court grants Prudential's Motion for Summary Judgment.

Respectfully submitted,
BACOU USA, INC. and
THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
By its attorneys,

William T. Bogaert,
*Admitted Pro Hac Vice*
Carey L. Bertrand
*Admitted Pro Hac Vice*
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

Local Counsel:

Michael J. Pisaturo #5936
The Law Office of Michael J. Pisaturo, PC
1312 Atwood Avenue
Johnston, RI 02919
401-464-8111
401-942-4928 Fax

**Certification**

I hereby certify that I have mailed a copy of the within memorandum to counsel for plaintiff Anthony J. Gianfrancesco, Esq. at 155 South Main Street, Providence, RI 02903 on the 29th day of September 2005.

Michael J. Pisaturo

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MARY ANN BOUDREAU,<br>Plaintiff<br><br>v.<br><br>BACOU USA, INC. AND<br>PRUDENTIAL INSURANCE<br>COMPANY,<br>Defendants | CIVIL ACTION NO.: 05-154 S |

**MEMORANDUM OF THE DEFENDANTS**
**<u>IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Fed.R.Civ.P. 56(c) and L.R. 12, Bacou USA, Inc. and The Prudential Insurance Company of America (hereinafter collectively referred to as "Prudential"), submits this memorandum in support of their motion for summary judgment.

**INTRODUCTION**

This action involves a claim for disability benefits under the Bacou USA, Inc. Long Term Disability Coverage for all Employees disability insurance plan ("Plan"). The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, ("ERISA") 29 U.S.C. §§1001 *et seq.* The Plan's disability benefits are insured by The Prudential Insurance Company of America ("Prudential"). Plaintiff Mary Ann Boudreau ("Boudreau") was employed by Uvex Safety, a division of Bacou USA, Inc. ("Bacou"), and she participated in the Plan.

## PROCEDURAL HISTORY

Plaintiff filed her Complaint under ERISA, 29 USC §1002(1) on April 14, 2005. Both Defendants timely filed an Answer to the Complaint on or about May 4, 2005. The parties appeared for a Rule 16 conference before Judge Smith on June 2, 2005. An order entered thereafter that Motions for Summary Judgment should be filed by September 30, 2005 and said motion followed.

## STATEMENT OF FACTS

**The Bacou LTD Plan**

This suit arises out of Boudreau's participation in the Plan. The Plan was established and is maintained by Boudreau's former employer, Uvex Corp. through BACOU, USA, Inc. Record MAB0023-MAB0051[1]. The Plan's benefits are insured by Prudential. Compl. ¶ 3; Answer ¶ 3. The Plan is governed by ERISA. Compl. ¶ 2. Boudreau worked as a buyer for Uvex Corp. (a subsidiary of Bacou USA, Inc., but referred to throughout as "Bacou"). MAB 0055-0056. Boudreau worked at Uvex for almost 20 years. MAB 0061. Boudreau ceased working for Uvex on April 12, 2000. Compl. ¶ 6.

**Pertinent Plan Language**

Prudential based its decision to discontinue benefits to Boudreau in accordance with the terms and conditions of the Bacou Plan. The Plan language upon which Prudential based its decision is as follows: with regard to claims for total disability benefits, the Plan's Booklet provides as follows:

"Total Disability" exists when Prudential determines that all of these conditions are met:

---

[1] Citations to the record are to the Record for Judicial Review ("Record") filed by the Parties and Bates stamped MAB0001-MAB0508.

(1) Due to Sickness or accidental injury, both of these are true:
  (a) you are not able to perform, for wage or profit, the material and substantial duties of your occupation.
  (b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience. The Initial Duration is shown in the Schedule of Benefits.

(2) you are not working at any job for wage or profit.

(3) you are under the regular care of a Doctor. MAB0031.

The Plan defines the Elimination Period as, "For each period of Total Disability due to Sickness or accidental Injury, the first 180 days of continuous Total Disability." MAB0026. To qualify for the Plan's long term disability benefits a claimant must be totally disabled for a continuous period of 180 days during which benefits are not payable. MAB0026. The Plan's benefit limitation for mental, psychoneurotic or personality disorder clause provides as follows:

> "In that case benefits are not payable for your disability for more than 24 months. There are these exceptions if you are totally disabled at the end of the twenty-fourth month for which are payable:
>
> (1) If you are confined in a Hospital for one or more of the disorders above at the end of the twenty-fourth month, the following will apply. While you remain Totally Disabled, benefits are payable for the duration of that Confinement and, unless (2) below applies, for up to three additional months after your Confinement ends.
> (2) If, after the twenty-fourth month, you become Confined in a Hospital for one or more of the disorders above for at least 14 consecutive days, the following will apply. While you remain Totally Disabled, benefits are payable for the remaining duration of that Confinement and for up to three additional months after your Confinement ends.
>
> But benefits are not payable for more than the Maximum Benefit Duration." MAB0034

**<u>Boudreau's LTD Claim</u>**

**<u>Initial Decision</u>**

Boudreau initially filed a claim for long term disability benefits based on the chronic conditions of Fibromyalgia, Chronic Fatigue syndrome, confusion and poor memory. MAB0052-0053, MAB0055, MAB 0089. Prudential reviewed the medical records submitted in

support of Boudreau's claim, including records from Slatersville Physical Therapy, Dr. Aubuchon and Dr. Clough. MAB0089-0090. Prudential determined on June 8, 2001 that Boudreau was not eligible for benefits as the medical records reviewed did not document a change in her chronic condition which caused her to cease working. MAB 0089-0090. Boudreau, through her attorneys at the time, Green & Greenberg, appealed the decision of Prudential on or about February 24, 2002. MAB0100-MAB0101. Prudential reviewed the medical records provided in support of the appeal, including records from Dr. Catallozzi, Dr. Zimmerman, Dr. Clough, Dr. Donta, and Slatersville Physical Therapy. MAB 0108-0111. On or about April 25, 2002, Prudential determined that Boudreau was eligible for total disability benefits for the limited period of October 10, 2000 through April 8, 2001 due to her treatment for carpal tunnel syndrome and recovery from carpal tunnel surgery. MAB0108-MAB0111.

However, Prudential determined that the medical records did not substantiate total disability beyond that period. MAB0110. The cervical MRI records indicated moderate to advanced central stenosis but clinical exams were unremarkable. MAB 0109. The letters and reports from Dr. Aubuchon[2] indicated that the chief complaint was pain with secondary depression. MAB 0109, MAB 0060-0061, MAB 0062, MAB 0075-0078. Further the medication regimen did not support treatment for major depression and Dr. Aubuchon failed to state the type of psychotherapy provided, the goals and objectives of treatment, nor did he state the nature and severity of symptoms. MAB 0109. Although Boudreau was diagnosed with Lyme disease, there was no evidence to suggest that the condition would continuously prevent her from working. MAB 0110. Despite the diagnosis of Fibromyalgia based on a tender point examination, Prudential noted that Boudreau's physicians had consistently encouraged Boudreau to engage in

regular exercise. MAB 0110. Boudreau's own reported activities of maintaining her home, shopping, going to the ocean and riding the bumper cars at an amusement park reflected physical capabilities consistent with at least a sedentary level of function. MAB 0110.

**Appeal of Initial Decision**

Boudreau notified Prudential of her intent to appeal the decision on May 8, 2002. MAB0112. Boudreau then formally appealed the decision, through her current counsel Anthony Gianfrancesco, on or about August 5, 2002. MAB 0114-MAB0115. Boudreau supplemented her appeal on or about September 13, 2002. MAB 0122-MAB0130. On or about November 8, 2002, Prudential extended benefits from April 9, 2002 through October 9, 2002. MAB 0134-MAB0135. This extension of benefits was due to Ms. Boudreau's disability being caused at least in part by a mental, psychoneurotic or personality disorder. MAB 0134. Since this was a limited period of benefits extended, Prudential continued its review of whether Boudreau was eligible for benefits after October 9, 2002. MAB 0136-MAB0138. As part of that review, Prudential had a file review performed by Dr. Stephen N. Gerson. MAB 0136-MAB0138. Dr. Gerson performed a file review of the medical records from the neuropsychological testing of Dr. Marybeth Spitznagel, M.S., neuropsychology intern and Dr. Holly Westervelt. MAB 0136-0138, MAB 0417. Dr. Gerson concluded that this testing was inconclusive in terms of whether there was cognitive impairment. MAB 0138. Dr. Gerson further concluded that in most zones, other than recent memory, it did not appear evident that there was severe cognitive impairment. MAB 0138. Prudential then extended her benefits again through January 31, 2003, which was actually beyond the 24 month benefit limitation for disability caused by mental, psychoneurotic or

---

( . . . continued)

[2] Dr. Aubuchon refused to provide office notes due to legibility issues, however, he provided Prudential with letters. MAB 0109, MAB 0060-0061, MAB 0062, MAB 0075-0078.

personality disorders. MAB0139-0141. Prudential continued to review her claim for benefits beyond January 31, 2003. MAB 0139-0140.

Boudreau supplemented her appeal on December 27, 2002 and on May 19, 2003. MAB 0144-0146, MAB0157-MAB0165. As part of its review of the appeal, Prudential obtained an "activities investigation" (surveillance) on Boudreau over a three day period at and around her home in Florida.[3] MAB0166-0177. On June 10, 2003, Boudreau was observed riding a bike, operating a motor vehicle, bending, walking and carrying a back pack with no apparent difficulty. MAB0169-0172. On June 17, 2003, Boudreau was observed doing yard work using a rake and hose, walking a small dog, driving over 20 miles, lifting large shopping bags, pushing a shopping cart, standing, sitting and walking. MAB 0172-0175. On June 18, 2003, Boudreau was observed going to a car dealership, a nursery and a donut shop. MAB 0175-0177.

Also, Prudential arranged for Ms. Boudreau to be examined and evaluated by an independent psychologist who was Board Certified in Clinical and Forensic Psychology, ABPP, Neuropsychology and ABPN. MAB 0193-0197. Harold H. Smith, Ph.D. examined Boudreau on September 29, 2003 and reviewed her medical records. MAB 0193. Mrs. Boudreau's test data provided no support for her claim of cognitive dysfunction. MAB 0197. Smith reported that the results of the symptom validity testing scores reflected incomplete effort and her scores were far worse than those produced by persons who have documented severe traumatic brain injury and therefore did not reflect her true ability. MAB 0197. Smith reported that the profile she produced on personality inventory showed high degree of focus on body functioning and health matters. MAB 0197. Smith concluded that Boudreau did not have significant dysfunction that might impact her ability to perform her employment duties and responsibilities. MAB 0197.

Smith further concluded that her moving to Florida combined with her receiving Social Security disability payments suggested that her prognosis for return to work at Uvex was poor. MAB 0197.

On October 31, 2003, Prudential completed its review of Ms. Boudreau's claim and determined that she did not meet the eligibility requirements for continued benefits. MAB 0202-0205. Prudential's decision was based on the Plan language, the medical records provided by Plaintiff, the surveillance obtained and the review of the records and examination of Ms. Boudreau by Dr. Smith. Id. Specifically, Prudential reviewed Boudreau's treatment records from the office of Dr. Cozzolino. MAB 0430-0443. Prudential noted that Dr. Cozzolino indicated that Boudreau had been in a boating accident and had experienced worsening pain. MAB 0203, MAB 0435- 0436. Prudential also noted that on May 13, 2003, Dr. Cozzolino concluded that Boudreau's Lyme disease was at baseline and on June 10, 2003, Dr. Cozzolino noted that the chronic fatigue syndrome was at baseline. MAB 0203, MAB 0435-0436, MAB 0437. Prudential also took into consideration Dr. Cozzolino's note that Boudreau had fallen off a steep stool while hanging a curtain. MAB 0204, MAB 0441. Essentially, Prudential determined that Ms. Boudreau's medical condition would not prevent her from performing her duties of her occupation as buyer at Uvex based on the reports of Dr. Cozzolino, the examination by Harold Smith and the activities investigation performed. MAB 0204.

**First Request for Reconsideration**

Boudreau formally appealed requesting reconsideration of Prudential's decision on or about December 22, 2003. MAB 0209. Boudreau provided additional medical information, specifically a letter from Dr. Cozzolino dated December 2, 2003, on or about January 8 and 21,

( . . . continued)

[3] Plaintiff moved from Rhode Island to Florida during the appeals process. MAB 0142.

2004. MAB 0213-0214, MAB 0215-0216. Dr. Cozzolino opined that Boudreau was 100% disabled from performing duties of any job, that she would never be able to work regular hours or consistently attend a regular work schedule due to the waxing and waning of her conditions. MAB 0214.

On or about February 4, 2004, Prudential upheld its decision to deny benefits to Ms. Boudreau. MAB 0217-0218. Again, Prudential's decision was based on the Plan definitions, the medical information provided by Plaintiff, the letter from Dr. Cozzolino, the activities investigation (surveillance) and the nature of Boudreau's employment as a Buyer at Uvex. Id. Prudential noted that Dr. Cozzolino's letter did not address the observed activities of Boudreau or the results of the neuropsychological testing. MAB 0218. Prudential acknowledged that Boudreau suffered from a chronic condition but determined that this did not equate to an impairment or Total Disability, as defined by the Plan. MAB 0218. Prudential reasoned that the activities investigation documented a level of activity which did not correlate with the debilitating impairments Boudreau reported to Dr. Cozzolino and would not prevent sedentary work. MAB 0218.

**Second Request for Reconsideration**

On March 22, 2004, Boudreau submitted her second request for reconsideration to Prudential. MAB 0224. In support of her appeal, Boudreau submitted a Vocational Assessment Employability Evaluation ("VAEE") prepared by Paul Murgo. MAB 0225- MAB 0230. Mr. Murgo concluded that Boudreau was not capable of competing for much less sustaining competitive employment. MAB 0229-0230. Boudreau then submitted additional documents in support of her third appeal for reconsideration of this decision and formally appealed on or about November 8, 2004. MAB 0236. Specifically, Boudreau supplemented her appeal with the report

of Dr. Edward Feldmann, a neurologist from Rhode Island Hospital. MAB 0456- 0457. Dr. Feldmann performed a records review after being retained by Attorney Gianfrancesco. MAB 0456. Dr. Feldmann, without examining Boudreau, opined that with a reasonable degree of medical certainty, Boudreau's combination of medical conditions precluded her ability to work and that her chronic medical conditions rendered her totally disabled. MAB 046.

Prudential retained Dr. Tanya Lumpkins, an independent physician with a specialty in Rheumatology, to review all of the medical records and the file. MAB 0239-0247. Dr. Lumpkins reviewed treatment and medical records from Dr. Donta, Dr. Catallozzi, Dr, Aumentado, Dr. Cozzolino, Dr. Clough, Slatersville Physical Therapy, Inc., Harold Smith, PhD, Holly Westervelt, PhD, Dr. Gerson's review, the activities investigation, the Social Security Administration's decision, the Uvex Safety job description, the Vocation Assessment from Paul Murgo and multiple correspondences from Boudreau's attorneys. MAB 0244-0245. Dr. Lumpkins advised that the cervical stenosis would support limitations of cervical motion and restrictions lifting up to 20 lbs., that the carpal tunnel symptoms would not require restrictions, the Lyme disease diagnosis was not active and that there was no documentation in the record to support chronic Lyme disease as the diagnosis responsible for the current clinical complaints requiring restrictions or limitations. MAB 0245. Dr. Lumpkins further advised that a diagnosis of Fibromyalgia alone was insufficient to claim total impairment as there were no organic dysfunctions of the musculoskeletal system that would restrict the physical abilities of Boudreau. MAB 0255. Dr. Lumpkins opined that the current level of function displayed in the records is that of independence with activities of daily living and ability to drive, ride a bicycle, bend, lift and carry. MAB 0247. Dr. Lumpkins concluded that the record supported Boudreau's ability to function in at least a sedentary capacity. MAB 0247. On December 23, 2004, Prudential upheld

its decision to terminate Ms. Boudreau's claim for benefits effective November 1, 2003. MAB0249-0251. Prudential based its decision upon the Plan definitions, review of additional medical records, review of the vocational assessment performed by Paul Murgo, and an independent review of the file by Dr. Lumpkins. Id.

**Final Appeal**

On January 17, 2005, Ms. Boudreau submitted her final appeal of Prudential's decision. MAB0252. Boudreau submitted records from Dr. Michael J. Cichon in support of her appeal. MAB 0444, MAB 0453-0455, 0463-0465. Again, Prudential forwarded all of the medical records it received as part of the final appeal to an independent physician reviewer, Dr. Tanya Lumpkins. MAB 0259-0270. Dr. Lumpkins reviewed progress notes from Dr. Cichon, IGenex Laboratory Results, Medical Diagnostics Laboratory Results, Quest Diagnostics Results, Notes from Dr. Donta, letters from Attorney Gianfrancesco and an article from the Lyme Disease Reporter. MAB 0262, MAB 0444-0455, MAB 0458-0465, MAB 0413. Dr. Lumpkins opined that the new medical records, specifically those diagnosing Boudreau with neuroborrelliosis, agammaglobulineamia, and hypogammaglobulinemia, did not demonstrate impairment with sufficient severity to require physical limitations. MAB 0266. Dr. Lumpkins also noted that there was no change in the recommendations regarding physical impairments or limitations based on the new medicals. MAB 0266. On or about March 30, 2005, Prudential upheld its decision. MAB 0273-0275. Prudential based its final decision on the policy language, a review of the additional medical information provided, and the file review performed by Dr. Lumpkins. Id. Specifically, Prudential determined that the policy language regarding the mental, psychoneurotic or personality disorder benefit limitation applied to the claim in addition to the criteria required for meeting the definition of total disability. Id. Thus, Boudreau was not

physically impaired from performing the material and substantial duties of her occupation. Id. Further, Prudential reasoned that the file review performed by Dr. Lumpkins indicated that Boudreau's new diagnoses did not cause impairment of sufficient severity to require physical limitations. Id. Coupled with its own review of the medical documentation, Prudential determined that the more recent available medical documentation did not support that Boudreau was physically unable to perform the material and substantial duties of her sedentary occupation from the time that her claim was terminated through March 30, 2005. Id. This decision marked the end of the administrative appeals process. As a result, Boudreau instituted the instant litigation.

## LAW AND ARGUMENT

### I. THIS ACTION IS RIPE FOR RESOLUTION BY SUMMARY JUDGMENT.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences and all credibility issues are resolved in favor of the non-moving party. See Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 255 (1986).

Once the moving party satisfies the initial burden, the burden shifts to the non-moving party to show, as to each issue on which he or she bears the burden of proof, that a factfinder could reasonably find in his or her favor. Rochester Ford Sales. Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002). If the moving party will bear the burden of proof at trial, "that party must

support its motion with credible evidence-- using any of the materials specified in Rule 56(c)-- that would entitle it to a directed verdict if not controverted at trial."[4] Winnacunnet Coop. Sch. Dist. v. Nat'l Union Fire Ins. Co., 84 F.3d 32, 35 (1st Cir. 1996)(quoting Celotex, 477 U.S. at 331). When, as here, parties file cross-motions for summary judgment, the court must consider the motions separately to determine whether summary judgment may be entered under the Rule 56 standard. Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002). ERISA denial of benefits actions often are decided at the summary judgment stage. Twomey, 328 F.3d 27, 31 (1st Cir. 2003); Terry, 145 F.3d 28, 30 (1st Cir. 1998); McMahon v. Digital Equipment Corp., 162 F.3d 28, 39 (1st Cir. 1998).

In accordance with Rule 56(c), this Court should grant Prudential's motion for summary judgment because, as will be shown below, there are no issues of fact material to the plaintiff's claim.

## II. THE STANDARD OF REVIEW IN ERISA 502(a) BENEFITS ACTIONS.

In ERISA § 502(a) cases, the decision to deny benefits is reviewed under a de novo standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). ). It is well-established law that a Plaintiff in an ERISA § 502(a) LTD action must bear the burden of proof in establishing disability, regardless of the standard of review. Terry, supra.; Gallagher v. Reliance Standard Life Ins. Co., 305 F. 3d 264, 276 (4th Cir. 2002)("our *de novo* review of Reliance's denial of Gallagher's claim for disability benefits reveals that Gallagher failed to submit, as required under the Plan, objectively

---

[4] "[A] verdict may be directed only if the evidence, viewed from this perspective [most favorable to the nonmovant], would not permit a reasonable jury to find in favor of the plaintiff[ ]on any permissible claim or theory."Espada v. Lugo, 312 F.3d 1, 2 (1st Cir. 2002)(quoting Andrade v. Jamestown Hous. Auth., 82F.3d, 1179, 1186 (1st Cir. 1996).

satisfactory proof of a disability that made him incapable of performing each and every material duty of his occupation.") Under Rule 56(c), a moving party is entitled to summary judgment if it demonstrates that the party opposing the motion has no reasonable expectations of proving an essential element of that party's case. Celotex, supra. The Court's focus should be on the final decision of Prudential and not the intermediary decisions. Terry, 145 F.3d at 36.

**A. The Applicable Standard of Review of Prudential's Claim Decision Is Whether The Decision Was Arbitrary and Capricious Or An Abuse of Discretion Based on the Record Before Prudential At The Time It Made Its Decision.**

1. Standard of Review

Judicial review in this matter is limited to determining whether Prudential's decision was arbitrary and capricious or without rational basis. The Supreme Court has determined that "a denial of benefits challenged under §502(a)(1)(B) of ERISA, §1132(a)(1)(B), is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone v Tire & Rubber Co., v. Bruch, 489 U.S. 101, 115 (1989); Sullivan v. Raytheon Co., 262 F. 3d 41 (1st Cir. 2001); Pari-Fasano v. ITT Hartford Life & Accident Ins., Co., 230 F. 3d 414, 418 (1st Cir. 2000); Terry, supra, 145 F.3d at 35. When a clear discretionary grant is found, "Firestone and it progeny mandate a deferential arbitrary and capricious standard of judicial review." Recupero v. New England Tel. and Tel. Co., 118 F.3d 820, 827 (1st Cit. 1997).

The Plan specifically provides that Prudential is the ultimate decision-maker when it comes to benefit determinations and specifically provides that "Total Disability" exists when

Prudential determines that all of these conditions are met...MAB0031.[5] Based on the foregoing, it is beyond any reasonable dispute that the Plan and the Committee granted Prudential "discretionary authority to determine eligibility for benefits and to construe the terms of the Plan." Firestone, supra. The language [of the Plan] mentioned above admits of no other interpretation. Terry, supra at 37.

Because the Plan affords Prudential discretionary authority to determine eligibility for benefits and to construe the terms of the Plan, Prudential's decision must be upheld unless it is arbitrary, capricious, or an abuse of discretion. Sullivan v. Raytheon Co., 262 F.3d 41(1st Cir. 2001). The focus of this Court's review ultimately will be on the final decision made by Prudential. Terry v Bayer, 145 F.3d 28, 36 (1st Cir. 1998). Since it is a prerequisite to obtaining judicial review that a claimant exhaust his or her administrative remedies, it seems contrary to the purposes of ERISA to focus on intermediate decisions. Terry, supra.

---

[5] First, the Plan, states that "Total Disability" exists when Prudential determines that all of these conditions are met:

(1) Due to sickness or accidental injury, both of these are true:
   (a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
   (b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience. The Initial Duration if shown in the Schedule of Benefits.
(2) You are not working for any job or profit.
(3) You are under the regular care of a Doctor. (emphasis added) MAB 0031.

Second, Prudential also retains the power to place an individual receiving benefits on Rehabilitation Status,

"Prudential may determine, after consulting your doctor that:
(1) you are able to be in a program of rehabilitation that may help you to be able to support yourself; and
(2) you should cease to be disabled and be able to support yourself after being in such program. MAB 0033

Finally, the Plan also explicitly states that Prudential's decisions govern determinations on benefit limitation,

"This section applies if your Total Disability, as determined by Prudential, is caused at least in part by mental, psychoneurotic or personality disorder" MAB 0034.

2. Scope of Review Under Arbitrary and Capricious Standard

When a claims administrator has discretion in administering an ERISA-regulated employee benefit plan, judicial review is limited to determining whether the administrator's action is arbitrary and capricious or without rational basis. Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 29-30 (1st Cir. 2001). The abuse of discretion standard limits the grounds upon which a discretionary claim decision can be disturbed. In reviewing such a decision, a court may not "substitute its judgement" for that of the claim fiduciary. Terry, 145 F.3d at 40. It is for plan fiduciaries, and not courts, to choose between reasonable alternatives involving plan interpretation and administration. Jestings v. New England Telephone & Telegraph Co., 757 F.2d 8, 9 (1st Cir. 1985).

When vested with discretionary authority, it is the claim administrator's responsibility to weigh conflicting evidence. Vlass, 244 F.3d at 32. It is the claim administrator's responsibility to make factual finding relating to a claimant's condition. Doyle v. The Paul Revere Life Ins. Co., 144 F.3d, 181, 185 (1st Cir. 1998). Under the Plan, it is Prudential's duty to determine whether a claimant is able to perform the material and substantial duties of her occupation due to sickness or accidental injury. MAB 0031.

3. Record for Review

In an ERISA denial of benefits action, where abuse of discretion is the standard of review, the ordinary rule is that review is limited to the record made before the entity being reviewed, which, in this instance, is Prudential. Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003). The proper record to be considered by the Court is the record before Prudential when it made its final claim decision. *See* Kiley v. Travelers Indem. Co., 853 F. Supp. 6, 14 (D. Mass. 1994)("at least in the context of applying deferential standard of review,

this Court will limit the record to the facts before [the claims administrator] absent further guidance from the First Circuit"). In Liston, the First Circuit stated that "at least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." Id.

On June 28, 2005, Defendants provided the administrative record to the Plaintiff. Prior to the filing of this motion, the parties filed an agreed-upon Record for Judicial Review. The Record contains the documents that the parties agree were before Prudential when it made its final benefit determination and consists 508 pages of documents. The full record for judicial review is now before the Court. Based on the standard of review, the scope of review and the Record, the Defendants are entitled to summary judgment as a matter of law.

**B. Prudential's Determination That Plaintiff Was Not Totally Disabled Is Reasonable And Should Be Upheld Because It Is Supported By Substantial Evidence in the Record.**

1. There Are Contractually Supportable Reasons for Denying Benefits

There is evidence in the record that is reasonably sufficient to support Prudential's conclusion that the Plaintiff has the capacity to perform the duties of her sedentary occupation as a Buyer at Uvex. *See* Sullivan, supra at 51 (security guard's ability to perform work in a sedentary environment made him ineligible for LTD benefits). In making its claim decision, Prudential relied upon the Plan's definition of Total Disability, the limitations on mental illness, the physical requirements of the position of Buyer at Uvex, surveillance of Boudreau, the plaintiff's medical records, examination of Plaintiff by an independent neuropyschologist and numerous independent file reviews performed by a Rheumatologist.

In reaching its determination that benefits were not payable to Plaintiff, Prudential considered that in order to be deemed Totally Disabled under the Plan, the plaintiff must be incapable of performing, for wage or profit, the material and substantial duties of her occupation. MAB 0031. The record reflects that Plaintiffs job is sedentary. MAB 0057. Moreover, Plaintiff's own reported activity level indicated functioning at a greater level. MAB 0466.

Further, the investigation activity (surveillance) indicated that over a three day period, June 10, 17 and 18, 2003, Boudreau was able to function at a greater level than sedentary. MAB 0166-0177. On June 10, 2003, Boudreau was observed riding a bike, operating a motor vehicle, bending, walking and carrying a back pack with no apparent difficulty. MAB0169-0172. On June 17, 2003, Boudreau was observed doing yard work using a rake and hose, walking a small dog, driving over 20 miles, lifting large shopping bags, pushing a shopping cart, standing, sitting and walking. MAB 0172-0175. On June 18, 2003, Boudreau was observed going to a car dealership, a nursery and a donut shop. MAB 0175-0177. Boudreau was seated in a vehicle for over thirty minutes and was observed walking and riding in a vehicle. MAB 0175-0177. While Plaintiff's own physician opined (or believed) that Boudreau was disabled, the medical evidence reviewed coupled with the Plan definitions did not support a finding of total disability.

Given the definition of Total Disability, the medical information and the activity observed, Boudreau did not meet the criteria for Total Disability. Thus, Prudential had contractually supportable reasons for denying benefits to Boudreau.

2. Substantial Evidence Exists to Support Prudential's Decision

Substantial evidence exists within the record to support Prudential's decision. Thus, the decision itself was not unreasonable under a deferential standard of review. It is well settled that a reviewing court does not weigh the evidence and determine which side it believes is right.

Doyle, 144 F.3d at 184 (1st Cir. 1998). Rather, the reviewing court's role is limited to deciding whether the claim decision was supported by substantial evidence. Terry, 145 F.3d 41. In this context, substantial evidence is evidence that is reasonably sufficient to support a conclusion. Doyle, 144 F.3d at 184; See also Sullivan v. Raytheon Co., 262 F.3d 41, 51 (1st Cir. 2001). It is well settled that a claim administrator's decision will be upheld if it is reasoned and supported by substantial evidence. Terry v. Bayer, 145 F.3d 28, 41 (1st Cir. 1998).

The fact that Boudreau's physicians opined (or believed) that Plaintiff was totally disabled does not render Prudential's claim decision arbitrary and capricious. *See* Guarino v. Metropolitan Life Ins. Co., 915 F. Supp. 435, 445 (D. Mass. 1995)(granting summary judgment to the defendant in a long term disability action involving an ERISA-regulated benefit plan.); *see also* Jestings v. New England Tel. And Tel. Co., 757 F.2d 8, 9 (1st Cir. 1995)(reiterating that it is for the trustee of the plan, and not judges, to choose between reasonable alternatives). Inasmuch as Prudential's decision was not lacking a "rational basis," the Court cannot disregard it. Govoni v. Bricklayers, Masons & Plasters Int'l Union of America, Local 5, 732 F.2d 250, 252 (1st Cir. 1984). Moreover, the existence of contrary evidence in the record does not make Prudential's decision arbitrary. Vlass, supra at 30.

At every step of the decision and appeal process, Prudential reviewed the medical evidence provided by Boudreau and the Plan language in order to make determinations of Boudreau's claim. In addition, Prudential enlisted the assistance of independent medical providers to review the records and/or examine Ms. Boudreau and investigated Boudreau's activity level. Initially, Prudential based its decision on an internal review of the medical records provided by Boudreau. MAB 0089-MAB 0091. Upon Boudreau's appeal of the initial decision, Prudential obtained an independent review of the medical records, an investigation of

Boudreau's activities and a neuropsychological examination of Boudreau as part of its review. MAB 0136-0138, 0166-0177, 0193-0197. Upon Boudreau's first request for reconsideration, Prudential reviewed the additional medical information provided by Dr. Cozzolino in making its decision. MAB 0213-0216. During Prudential's review of Boudreau's second request for reconsideration, Prudential retained Dr. Lumpkins, a Rheumatologist to review the medical records provided by Boudreau. MAB 0239-240. Again, as part of Prudential's review of Boudreau's third request for reconsideration, Prudential had Dr. Lumpkins perform an additional records review of the most recent medical records. MAB 0259-0270. Prudential's decision was supported by substantial evidence contained in the record.

The burden of proving total disability rests with Boudreau. Terry, 145 F.3rd at 34. To qualify for benefits under the Plan a claimant must demonstrate an inability to perform the material and substantial duties of her occupation. Inasmuch as Prudential's claim decision was supported by substantial evidence in the record, Boudreau cannot satisfy her burden, and Prudential is entitled to judgment as a matter of law. The Liston court stated, "[e]ven where de novo review exists under ERISA, it is at least doubtful that courts should be in any hurry to consider evidence or claims not presented to the plan administrator." Liston v. Unum Corp. Officer Severance Plan, 330 F. 3d 19, 23 (1st Cir. 2003). (citing Quisenberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1025 (4th Cir. 1995); Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 616 (6th Cir. 1998)(Cole, J., concurring)). Once again, in this case, the burden of demonstrating that Prudential's decision to deny benefits was unreasonable rests with Boudreau. Terry, 145 F.3d at 34.

## CONCLUSION

For the foregoing reasons, Prudential requests that this Honorable Court grant Prudential's Motion for summary judgment.

Respectfully submitted,
BACOU USA, INC., and
THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
By its attorneys,

William T. Bogaert /by MJP

William T. Bogaert,
*Admitted Pro Hac Vice*
Carey L. Bertrand
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

Local Counsel:

Michael J. Pisaturo

Michael J. Pisaturo #5936
The Law Office of Michael J. Pisaturo, PC
1312 Atwood Avenue
Johnston, RI 02919
401-464-8111
401-942-4928 Fax

**Certification**

I hereby certify that I have mailed a copy of the within memorandum to counsel for plaintiff Anthony J. Gianfrancesco, Esq. at 155 South Main Street, Providence, RI 02903 on the 29th day of September 2005.

Michael J. Pisaturo

Michael J. Pisaturo