UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MARY ANN BOUDREAU,
Plaintiff

v.

BACOU USA, INC. AND
PRUDENTIAL INSURANCE
COMPANY,
Defendants

CIVIL ACTION NO.: 05-154 S

**L.R. 12.1 STATEMENT OF UNDISPUTES FACTS OF THE DEFENDANTS IN CONNECTION WITH THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to L.R. 12.1(1) of the United States District Court for the District of Rhode Island, Bacou Usa, Inc. and The Prudential Insurance Company of America (hereinafter collectively referred to as "Prudential"), submit this statement of material facts as to which Prudential contends there is no genuine issue necessary to be litigated.

**STATEMENT OF UNDISPUTED FACTS**

The following is Prudential's L.R. 12.1(1) concise statement of all undisputed material facts:

**The Bacou LTD Plan**

1. The Plan was established and is maintained by Boudreau's former employer, Uvex Corp. through BACOU, USA, Inc. Record MAB0023-MAB0051[1].

[1] Citations to the record are to the Record for Judicial Review ("Record") filed by the Parties and Bates stamped MAB0001-MAB0508.

2. The Plan's benefits are insured by Prudential. Compl. ¶ 3; Answer ¶ 3.

3. The Plan is governed by ERISA. Compl. ¶ 2.

4. Boudreau worked as a buyer for Uvex Corp. (a subsidiary of Bacou USA, Inc., but referred to throughout as "Bacou"). MAB 0055-0056.

5. Boudreau worked at Uvex for almost 20 years. MAB 0061.

6. Boudreau ceased working for Uvex on April 12, 2000. Compl. ¶ 6.

**Pertinent Plan Language**

7. The Plan language upon which Prudential based its decision is as follows: with regard to claims for total disability benefits, the Plan's Booklet provides as follows:

   "Total Disability" exists when Prudential determines that all of these conditions are met:

   (1) Due to Sickness or accidental injury, both of these are true:
      (a) you are not able to perform, for wage or profit, the material and substantial duties of your occupation.
      (b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience. The Initial Duration is shown in the Schedule of Benefits.
   (2) you are not working at any job for wage or profit.
   (3) you are under the regular care of a Doctor. MAB0031.

8. The Plan defines the Elimination Period as, "For each period of Total Disability due to Sickness or accidental Injury, the first 180 days of continuous Total Disability." MAB0026.

9. To qualify for the Plan's long term disability benefits a claimant must be totally disabled for a continuous period of 180 days during which benefits are not payable. MAB0026.

10. The Plan's benefit limitation for mental, psychoneurotic or personality disorder clause provides as follows:

"In that case benefits are not payable for your disability for more than 24 months. There are these exceptions if you are totally disabled at the end of the twenty-fourth month for which are payable:

(1) If you are confined in a Hospital for one or more of the disorders above at the end of the twenty-fourth month, the following will apply. While you remain Totally Disabled, benefits are payable for the duration of that Confinement and, unless (2) below applies, for up to three additional months after your Confinement ends.
(2) If, after the twenty-fourth month, you become Confined in a Hospital for one or more of the disorders above for at least 14 consecutive days, the following will apply. While you remain Totally Disabled, benefits are payable for the remaining duration of that Confinement and for up to three additional months after your Confinement ends.

But benefits are not payable for more than the Maximum Benefit Duration." MAB0034.

**Boudreau's LTD Claim**

**Initial Decision**

11. Boudreau initially filed a claim for long term disability benefits based on the chronic conditions of Fibromyalgia, Chronic Fatigue syndrome, confusion and poor memory. MAB0052-0053, MAB0055, MAB 0089.

12. Prudential reviewed the medical records submitted in support of Boudreau's claim, including records from Slatersville Physical Therapy, Dr. Aubuchon and Dr. Clough. MAB0089-0090.

13. Prudential determined on June 8, 2001 that Boudreau was not eligible for benefits as the medical records reviewed did not document a change in her chronic condition which caused her to cease working. MAB 0089-0090.

14. Boudreau, through her attorneys at the time, Green & Greenberg, appealed the decision of Prudential on or about February 24, 2002. MAB0100-MAB0101.

15. Prudential reviewed the medical records provided in support of the appeal, including records from Dr. Catallozzi, Dr. Zimmerman, Dr. Clough, Dr. Donta, and Slatersville Physical Therapy. MAB 0108-0111.

16. On or about April 25, 2002, Prudential determined that Boudreau was eligible for total disability benefits for the limited period of October 10, 2000 through April 8, 2001 due to her treatment for carpal tunnel syndrome and recovery from carpal tunnel surgery. MAB0108-MAB0111.

17. However, Prudential determined that the medical records did not substantiate total disability beyond that period. MAB0110.

18. The cervical MRI records indicated moderate to advanced central stenosis but clinical exams were unremarkable. MAB 0109.

19. The letters and reports from Dr. Aubuchon[2] indicated that the chief complaint was pain with secondary depression. MAB 0109, MAB 0060-0061, MAB 0062, MAB 0075-0078.

20. Further the medication regimen did not support treatment for major depression and Dr. Aubuchon failed to state the type of psychotherapy provided, the goals and objectives of treatment, nor did he state the nature and severity of symptoms. MAB 0109.

21. Although Boudreau was diagnosed with Lyme disease, there was no evidence to suggest that the condition would continuously prevent her from working. MAB 0110.

---

[2] Dr. Aubuchon refused to provide office notes due to legibility issues, however, he provided Prudential with letters. MAB 0109, MAB 0060-0061, MAB 0062, MAB 0075-0078.

22. Despite the diagnosis of Fibromyalgia based on a tender point examination, Prudential noted that Boudreau's physicians had consistently encouraged Boudreau to engage in regular exercise. MAB 0110.

23. Boudreau's own reported activities of maintaining her home, shopping, going to the ocean and riding the bumper cars at an amusement park reflected physical capabilities consistent with at least a sedentary level of function. MAB 0110.

**Appeal of Initial Decision**

24. Boudreau notified Prudential of her intent to appeal the decision on May 8, 2002. MAB0112.

25. Boudreau then formally appealed the decision, through her current counsel Anthony Gianfrancesco, on or about August 5, 2002. MAB 0114-MAB0115.

26. Boudreau supplemented her appeal on or about September 13, 2002. MAB 0122-MAB0130.

27. On or about November 8, 2002, Prudential extended benefits from April 9, 2002 through October 9, 2002. MAB 0134-MAB0135.

28. This extension of benefits was due to Ms. Boudreau's disability being caused at least in part by a mental, psychoneurotic or personality disorder. MAB 0134.

29. Since this was a limited period of benefits extended, Prudential continued its review of whether Boudreau was eligible for benefits after October 9, 2002. MAB 0136-MAB0138.

30. As part of that review, Prudential had a file review performed by Dr. Stephen N. Gerson. MAB 0136-MAB0138.

31. Dr. Gerson performed a file review of the medical records from the neuropsychological testing of Dr. Marybeth Spitznagel, M.S., neuropsychology intern and Dr. Holly Westervelt. MAB 0136-0138, MAB 0417.

32. Dr. Gerson concluded that this testing was inconclusive in terms of whether there was cognitive impairment. MAB 0138.

33. Dr. Gerson further concluded that in most zones, other than recent memory, it did not appear evident that there was severe cognitive impairment. MAB 0138.

34. Prudential then extended her benefits again through January 31, 2003, which was actually beyond the 24 month benefit limitation for disability caused by mental, psychoneurotic or personality disorders. MAB0139-0141.

35. Prudential continued to review her claim for benefits beyond January 31, 2003. MAB 0139-0140.

36. Boudreau supplemented her appeal on December 27, 2002 and on May 19, 2003. MAB 0144-0146, MAB0157-MAB0165.

37. As part of its review of the appeal, Prudential obtained an "activities investigation" (surveillance) on Boudreau over a three day period at and around her home in Florida.[3] MAB0166-0177.

38. On June 10, 2003, Boudreau was observed riding a bike, operating a motor vehicle, bending, walking and carrying a back pack with no apparent difficulty. MAB0169-0172.

---

[3] Plaintiff moved from Rhode Island to Florida during the appeals process. MAB 0142.

39. On June 17, 2003, Boudreau was observed doing yard work using a rake and hose, walking a small dog, driving over 20 miles, lifting large shopping bags, pushing a shopping cart, standing, sitting and walking. MAB 0172-0175.

40. On June 18, 2003, Boudreau was observed going to a car dealership, a nursery and a donut shop. MAB 0175-0177.

41. Also, Prudential arranged for Ms. Boudreau to be examined and evaluated by an independent psychologist who was Board Certified in Clinical and Forensic Psychology, ABPP, Neuropsychology and ABPN. MAB 0193-0197.

42. Harold H. Smith, Ph.D. examined Boudreau on September 29, 2003 and reviewed her medical records. MAB 0193.

43. Mrs. Boudreau's test data provided no support for her claim of cognitive dysfunction. MAB 0197.

44. Smith reported that the results of the symptom validity testing scores reflected incomplete effort and her scores were far worse than those produced by persons who have documented severe traumatic brain injury and therefore did not reflect her true ability. MAB 0197.

45. Smith reported that the profile she produced on personality inventory showed high degree of focus on body functioning and health matters. MAB 0197.

46. Smith concluded that Boudreau did not have significant dysfunction that might impact her ability to perform her employment duties and responsibilities. MAB 0197.

47. Smith further concluded that her moving to Florida combined with her receiving Social Security disability payments suggested that her prognosis for return to work at Uvex was poor. MAB 0197.

48. On October 31, 2003, Prudential completed its review of Ms. Boudreau's claim and determined that she did not meet the eligibility requirements for continued benefits. MAB 0202-0205.

49. Prudential's decision was based on the Plan language, the medical records provided by Plaintiff, the surveillance obtained and the review of the records and examination of Ms. Boudreau by Dr. Smith. Id.

50. Specifically, Prudential reviewed Boudreau's treatment records from the office of Dr. Cozzolino. MAB 0430-0443.

51. Prudential noted that Dr. Cozzolino indicated that Boudreau had been in a boating accident and had experienced worsening pain. MAB 0203, MAB 0435- 0436.

52. Prudential also noted that on May 13, 2003, Dr. Cozzolino concluded that Boudreau's Lyme disease was at baseline and on June 10, 2003, Dr. Cozzolino noted that the chronic fatigue syndrome was at baseline. MAB 0203, MAB 0435-0436, MAB 0437.

53. Prudential also took into consideration Dr. Cozzolino's note that Boudreau had fallen off a steep stool while hanging a curtain. MAB 0204, MAB 0441.

54. Essentially, Prudential determined that Ms. Boudreau's medical condition would not prevent her from performing her duties of her occupation as buyer at Uvex based on the reports of Dr. Cozzolino, the examination by Harold Smith and the activities investigation performed. MAB 0204.

**First Request for Reconsideration**

55. Boudreau formally appealed requesting reconsideration of Prudential's decision on or about December 22, 2003. MAB 0209.

56. Boudreau provided additional medical information, specifically a letter from Dr. Cozzolino dated December 2, 2003, on or about January 8 and 21, 2004. MAB 0213-0214, MAB 0215-0216.

57. Dr. Cozzolino opined that Boudreau was 100% disabled from performing duties of any job, that she would never be able to work regular hours or consistently attend a regular work schedule due to the waxing and waning of her conditions. MAB 0214.

58. On or about February 4, 2004, Prudential upheld its decision to deny benefits to Ms. Boudreau. MAB 0217-0218.

59. Again, Prudential's decision was based on the Plan definitions, the medical information provided by Plaintiff, the letter from Dr. Cozzolino, the activities investigation (surveillance) and the nature of Boudreau's employment as a Buyer at Uvex. Id.

60. Prudential noted that Dr. Cozzolino's letter did not address the observed activities of Boudreau or the results of the neuropsychological testing. MAB 0218.

61. Prudential acknowledged that Boudreau suffered from a chronic condition but determined that this did not equate to an impairment or Total Disability, as defined by the Plan. MAB 0218.

62. Prudential reasoned that the activities investigation documented a level of activity which did not correlate with the debilitating impairments Boudreau reported to Dr. Cozzolino and would not prevent sedentary work. MAB 0218.

**Second Request for Reconsideration**

63. On March 22, 2004, Boudreau submitted her second request for reconsideration to Prudential. MAB 0224.

64. In support of her appeal, Boudreau submitted a Vocational Assessment Employability Evaluation ("VAEE") prepared by Paul Murgo. MAB 0225- MAB 0230.

65. Mr. Murgo concluded that Boudreau was not capable of competing for much less sustaining competitive employment. MAB 0229-0230.

66. Boudreau then submitted additional documents in support of her third appeal for reconsideration of this decision and formally appealed on or about November 8, 2004. MAB 0236.

67. Specifically, Boudreau supplemented her appeal with the report of Dr. Edward Feldmann, a neurologist from Rhode Island Hospital. MAB 0456- 0457.

68. Dr. Feldmann performed a records review after being retained by Attorney Gianfrancesco. MAB 0456.

69. Dr. Feldmann, without examining Boudreau, opined that with a reasonable degree of medical certainty, Boudreau's combination of medical conditions precluded her ability to work and that her chronic medical conditions rendered her totally disabled. MAB 046.

70. Prudential retained Dr. Tanya Lumpkins, an independent physician with a specialty in Rheumatology, to review all of the medical records and the file. MAB 0239-0247.

71. Dr. Lumpkins reviewed treatment and medical records from Dr. Donta, Dr. Catallozzi, Dr, Aumentado, Dr. Cozzolino, Dr. Clough, Slatersville Physical Therapy, Inc., Harold Smith, PhD, Holly Westervelt, PhD, Dr. Gerson's review, the activities investigation, the Social Security Administration's decision, the Uvex Safety job description, the Vocation Assessment from Paul Murgo and multiple correspondences from Boudreau's attorneys. MAB 0244-0245.

72. Dr. Lumpkins advised that the cervical stenosis would support limitations of cervical motion and restrictions lifting up to 20 lbs., that the carpal tunnel symptoms would not require restrictions, the Lyme disease diagnosis was not active and that there was no documentation in the record to support chronic Lyme disease as the diagnosis responsible for the current clinical complaints requiring restrictions or limitations. MAB 0245.

73. Dr. Lumpkins further advised that a diagnosis of Fibromyalgia alone was insufficient to claim total impairment as there were no organic dysfunctions of the musculoskeletal system that would restrict the physical abilities of Boudreau. MAB 0255.

74. Dr. Lumpkins opined that the current level of function displayed in the records is that of independence with activities of daily living and ability to drive, ride a bicycle, bend, lift and carry. MAB 0247.

75. Dr. Lumpkins concluded that the record supported Boudreau's ability to function in at least a sedentary capacity. MAB 0247.

76. On December 23, 2004, Prudential upheld its decision to terminate Ms. Boudreau's claim for benefits effective November 1, 2003. MAB0249-0251.

77. Prudential based its decision upon the Plan definitions, review of additional medical records, review of the vocational assessment performed by Paul Murgo, and an independent review of the file by Dr. Lumpkins. Id.

**Final Appeal**

78. On January 17, 2005, Ms. Boudreau submitted her final appeal of Prudential's decision. MAB0252.

79. Boudreau submitted records from Dr. Michael J. Cichon in support of her appeal. MAB 0444, MAB 0453-0455, 0463-0465.

80. Again, Prudential forwarded all of the medical records it received as part of the final appeal to an independent physician reviewer, Dr. Tanya Lumpkins. MAB 0259-0270.

81. Dr. Lumpkins reviewed progress notes from Dr. Cichon, IGenex Laboratory Results, Medical Diagnostics Laboratory Results, Quest Diagnostics Results, Notes from Dr. Donta, letters from Attorney Gianfrancesco and an article from the Lyme Disease Reporter. MAB 0262, MAB 0444-0455, MAB 0458-0465, MAB 0413.

82. Dr. Lumpkins opined that the new medical records, specifically those diagnosing Boudreau with neuroborrelliosis, agammaglobulineamia, and hypogammaglobulinemia, did not demonstrate impairment with sufficient severity to require physical limitations. MAB 0266.

83. Dr. Lumpkins also noted that there was no change in the recommendations regarding physical impairments or limitations based on the new medicals. MAB 0266.

84. On or about March 30, 2005, Prudential upheld its decision. MAB 0273-0275.

85. Prudential based its final decision on the policy language, a review of the additional medical information provided, and the file review performed by Dr. Lumpkins. Id.

86. Specifically, Prudential determined that the policy language regarding the mental, psychoneurotic or personality disorder benefit limitation applied to the claim in addition to the criteria required for meeting the definition of total disability. Id.

87. Thus, Boudreau was not physically impaired from performing the material and substantial duties of her occupation. Id.

88. Further, Prudential reasoned that the file review performed by Dr. Lumpkins indicated that Boudreau's new diagnoses did not cause impairment of sufficient severity to require physical limitations. Id.

89. Coupled with its own review of the medical documentation, Prudential determined that the more recent available medical documentation did not support that Boudreau was physically unable to perform the material and substantial duties of her sedentary occupation from the time that her claim was terminated through March 30, 2005. Id.

Respectfully submitted,
BACOU USA, INC., and
THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
By its attorneys,

William T. Bogaert /by MJP

William T. Bogaert,
*Admitted Pro Hac Vice*
Carey L. Bertrand
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

Local Counsel:

Michael J. Pisaturo

Michael J. Pisaturo
The Law Office of Michael J. Pisaturo, PC
1312 Atwood Avenue
Johnston, RI 02919
401-464-8111
401-942-4928 Fax

**Certification**

I hereby certify that I have mailed a copy of the within memorandum to counsel for plaintiff Anthony J. Gianfrancesco, Esq. at 155 South Main Street, Providence, RI 02903 on the 30th day of September 2005.

Michael J. Pisaturo