Prudential Financial

Christopher J Caruso
Disability Claims Manager

The Prudential Insurance Company of America
Waiver of Premium
PO Box 402
Livingston, NJ 07039

Phone: (800) 524-0542 Ext: 7111
Fax: (973) 548-7530
Hours: 7:30am - 3:30pm EST

August 7, 2003

Anthony Gianfrancesco
Baluch, Gianfrancesco, Mathieu & Szerlag
Attorneys at Law
155 South Main Street, Suite 101
Providence, RI 02903-2963

Claimant: Mary Ann Boudreau
Control No: 96178
Claim No: 10463817
Date of Birth: 01/08/1950

Dear Mr. Gianfrancesco:

We have reviewed Mary Ann Boudreau's Long Term Disability file to determine her eligibility for the continuation of her Group Life Insurance under Group Policy G-96178 issued to Bacou USA Inc. We have determined that she does not meet the requirements to receive benefits under this Group Policy provision and are unable to approve her claim. However, this decision does not affect the status of her Long Term Disability Benefits and only reflects her eligibility for the continuation of her group life insurance (Group Life Insurance Premiums). This letter will outline the reasons for our decision.

The process followed in reviewing Mary Ann Boudreau's claim involved the following:

- Obtaining and reviewing information regarding the medical condition that she feels prevents her from working.
- Obtaining and reviewing information regarding her daily activities.
- Obtaining and reviewing information regarding her occupation (education, experience, and other occupations that she would be qualified to perform).
- Obtaining and reviewing information regarding her coverage.
- Obtaining and reviewing information regarding her Group Policy provisions.

**Group Policy Requirements**

In order to be eligible for this benefit Mary Ann Boudreau had to become Totally Disabled while a covered individual and less than age sixty.

Total Disability: You are "Totally Disabled" when:

1. You are not working at any job for wage or profit; and
2. Due to Sickness, Injury or both, you are not able to perform for wage or profit, the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience.

***Medical Information***

Mary Ann Boudreau stopped working due to various symptoms including depression, fatigue, and cognitive difficulties caused by diagnoses of fibromyalgia, chronic fatigue syndrome, Lyme's Disease, and psychogenic pain. She has not worked throughout the nine-month elimination period due to these conditions. We reviewed the medical documentation currently in her Long Term Disability file.

A Magnetic Resonance Imaging (MRI) test of the pelvis performed on November 13, 2000, revealed a leg length discrepancy without any bony abnormalities. This would not be a significant cause of Ms. Boudreau's complaints of pain. An MRI of the knees showed normal bones and soft tissues. There was no evidence of a fracture, dislocation, or other osseous abnormalities. An MRI of the lumbar spine showed only mild bony hypertrophy at the L4-5 and L5-S1 levels of the spine. The disc heights were preserved. There were no fractures, dislocations, or misalignments seen.

In office visit notes dated April 9, 2001, Dr. Kenneth R. Catallozzi indicated Ms. Boudreau had a right carpal tunnel release performed and was no longer experiencing numbness into the median nerve distribution of her fingers. There was good flexion and extension of her fingers as well as her wrist. Her radial pulse was intact. There was good supination and pronation of her elbow. Her elbow and shoulder range of motion were full.

Physical therapy progress notes dated August 17, 2001 note the claimant was capable of going to Maine with her grandchildren for the day. She went on several rides including the bumper cars. She also did quite a bit of walking. Physical therapy progress notes dated August 21, 2001 note she had progressed in physical therapy.

In a neuropsychological evaluation performed on August 30, 2002, it was noted that upon completion of the clinical interview Ms. Boudreau stated, "I need to fail this". The importance of putting forth her best effort was discussed. She then re-stated, "I need to fail this, but it needs to be done honestly". A second discussion regarding the importance of putting forth her best effort was performed prior to certain tests.

During testing for attentional functions Ms. Boudreau's auditory attentional capacity and mental control were below expectation. However, following the second discussion regarding her best effort, repeat testing yielded average performance. Mental arithmetic and psychomotor speed were average. Sustained attention was impaired, however it was noted that a significant number of errors were not made. Sustained selective attention showed poor controlled searching but average automatic detection. Speed of information processing on complex arithmetic tasks was within normal limits.

Executive functions testing revealed average results for visual planning, organization skills for simple and complex designs, response set maintenance and shifting, and verbal abstraction skills. Ms. Boudreau showed average phonemic verbal fluency and low average semantic verbal fluency.

On language and related functions testing, Ms. Boudreau evidenced intact comprehension, repetition, visual confrontation naming, and basic word reading and writing skills.

On visuospatial functions testing, discrimination of simple designs was average. Ms. Boudreau's copies of simple and complex designs were only mildly impaired, however, it was noted that the impairment appeared to be a result of hasty drawing rather than true visuospatial or constructional deficit. Block construction was average.

On learning and memory testing, memory skills were noted as mixed. On verbal learning tasks, Ms. Boudreau demonstrated a poor learning curve over five trials with the overall amount of information recalled across trials being in the impaired range. However, it was noted the list learning trials occurred prior to the second discussion regarding the importance of effort testing. This causes a discrepancy in the validity of learning and memory testing as the results of other tests dramatically improved following the second discussion.

Another neuropsychological testing exam was scheduled for July 8, 2003, with Dr. Smith. However, Ms. Boudreau did not show up for the appointment. In a telephone conversation with your office on July 21, 2003, our Long Term Disability Division was notified Ms. Boudreau was out of town when the testing was supposed to be performed and she did not receive the letter notifying her of the appointment until she returned. You indicated Ms. Boudreau was driving from Florida to Rhode Island and would not return until September 3, 2003.

Based on all the medical documentation in file, we are unable to conclude Ms. Boudreau is experiencing symptoms so severe they would render her unable to perform any type of occupation. It is likely she could return to work in a sedentary occupation on at least a part time basis. Additionally, Ms. Boudreau's documented activities do not correlate with her subjective complaints.

**Summary**

We have determined that Mary Ann Boudreau's medical conditions would not prevent her from performing, for wage or profit, the material and substantial duties of any job for which she is reasonably fitted by her education, training or experience. Therefore, she does not meet the definition of Total Disability as defined by this Group Policy and we are unable to approve her claim.

Please contact Mary Ann Boudreau's employer for the status of her Group Life Insurance and to determine whether she may be eligible for conversion.

You have a right to appeal this decision. If you elect to do so, your appeal must be made in writing by you or your authorized representative. The appeal must be submitted within 180 days of the date of your receipt of this letter. The appeal should contain:

- the reasons that you disagree with our determination
- the claimant's name, policy number and social security number (or claim number)

- medical evidence or documentation to support your position

Evidence or documentation may include but not be limited to such materials as:

- copies of therapy treatment notes
- any additional treatment records from physicians
- actual test results (e.g. EMG, MRI)

You may submit with the appeal any written comments, documents, records and any other information relating to Mary Ann Boudreau's claim.

The written appeal should be submitted to:

Umbalita Mingo; Team Manager
The Prudential Insurance Company Of America
Waiver of Premium Division
PO Box 482
Livingston NJ 07039

A determination on the claim appeal will be made within 45 days of the receipt of your appeal request. This period may be extended by 45 days if special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which the Appeals Review Unit expects to render a decision shall be furnished to you within the initial 45-day period. However, if Prudential requests additional information from you and you fail to respond, this period of time may be extended until you provide the requested information.

If your appeal is denied, you may seek a second appeal. The same conditions and time frames for the first appeal will apply to the second appeal.

If our decision to deny benefits is upheld at the second level of appeal, you may file a voluntary third appeal. You are entitled to receive upon request, sufficient information to make a decision about filing this appeal. The same time frame for the first appeal will apply to the third appeal.

After completion of the first two levels of appeal, you may also file a lawsuit under the Employee Retirement Income Security Act (ERISA). ERISA allows you to file suit for policy benefits and reasonable attorney's fees. Your decision on whether to file a third appeal will not affect your rights to sue under ERISA.

If you should have any questions regarding Mary Ann Boudreau's claim, please contact us at the above address or call (800) 524-0542, extension 7111. Any correspondence should include the identifying information shown at the top of this letter.

Sincerely,

Christopher J Caruso
Disability Claims Manager