UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MARY ANN BOUDREAU,<br>Plaintiff<br><br>v.<br><br>BACOU USA, INC. AND<br>PRUDENTIAL INSURANCE<br>COMPANY,<br>Defendants | CIVIL ACTION NO.: 05-154-S |

**DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now come the Defendants, Bacou USA Inc., and The Prudential Insurance Company of America (hereinafter collectively referred to as "Prudential") in opposition to Plaintiff's Motion for Summary Judgment.[1] As grounds for this objection, Prudential refers this Court to the incorporated memorandum of law; defendant's response to plaintiff's statement of undisputed facts and defendants' response to plaintiff's statement of disputed facts all attached hereto.

Respectfully submitted,

BACOU USA, INC. and
THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
By its attorneys,

William T. Bogaert / by MJP

William T. Bogaert,
*Admitted Pro Hac Vice*
Carey L. Bertrand
*Admitted Pro Hac Vice*

[1] This Objection shall serve as Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment and shall also serve as Defendants' Opposition to Plaintiff's Motion for Summary Judgment.

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

Local Counsel:

Michael J. Pisaturo
The Law Office of Michael J. Pisaturo, PC
1312 Atwood Avenue
Johnston, RI 02919
401-464-8111
401-942-4928 Fax

**CERTIFICATE OF SERVICE**

I, Michael J. Pisaturo, hereby certify that a true copy of the foregoing document was served upon all counsel of record by forwarding a copy of the same, first class mail, postage prepaid on this 28 day of October 2005 to:

Anthony J. Gianfrancesco, Esq.
Baluch, Gianfrancesco, Mathieu & Szerlag
155 South Main Street
Suite 101
Providence, RI 02903

Michael J. Pisaturo

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MARY ANN BOUDREAU,
Plaintiff

v.

BACOU USA, INC. AND
PRUDENTIAL INSURANCE
COMPANY,
Defendants

CIVIL ACTION NO.: 05-154-S

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION AND REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now come the Defendants, Bacou USA Inc., and The Prudential Insurance Company of America (hereinafter collectively referred to as "Prudential") in opposition to Plaintiff's Motion for Summary Judgment.[1] As grounds for this opposition, Prudential states as follows:

I. Standard of Review

Plaintiff has agreed that the applicable standard of review in this case is the arbitrary and capricious standard of review.[2] The First Circuit has ruled quite clearly as to what an arbitrary and capricious review is and there is no void of case law in Rhode Island and in the First Circuit regarding this standard. When a clear discretionary grant is found, "Firestone and it progeny mandate a deferential arbitrary and capricious standard of judicial review." Recupero v. New England Tel. and Tel. Co., 118 F.3d 820, 827 (1st Cir. 1997). Since Prudential has discretion in

[1] This Opposition shall serve as Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment and shall also serve as Defendants' Opposition to Plaintiff's Motion for Summary Judgment.

[2] When an arbitrary and capricious standard of review applies and review is based solely upon an agreed upon record, summary judgment is merely a mechanism for tendering the issues and no special inferences as to be drawn in favor of Plaintiff resisting summary judgment. Liston v. Unum Corp. Officer Severance Plan, 330 F. 3d 19, 24 (1st Cir. 2003).

administering the plan, judicial review is limited to determining whether the administrator's action is arbitrary and capricious or without rational basis. Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 29-30 (1st Cir. 2001). It is Prudential's responsibility to weigh conflicting evidence. Vlass, 244 F.3d at 32. It is also Prudential's responsibility to make factual finding relating to a claimant's condition. Doyle v. The Paul Revere Life Ins. Co., 144 F.3d, 181, 185 (1st Cir. 1998). Because Prudential's decision was reasoned and supported by substantial evidence, it should be upheld. Terry v. Bayer, 145 F.3d 28, 41 (1st Cir. 1998).

Despite this body of law, Plaintiff has attempted to change the arbitrary and capricious standard of review in Rhode Island and in the First Circuit. Plaintiff's inclusion of "sliding scale approach" (as enunciated in the Seventh (7th) Circuit's Van Boxel) and/or a "tempered" standard (as enunciated in the Seventh (7th) Circuit's Lang) into the First Circuit's definition of an arbitrary and capricious standard of review is flat wrong. Plaintiff, while agreeing that the arbitrary and capricious standard applies, is trying to persuade this Court that a completely different standard applies by referring to 7th Circuit cases. These cases are not precedent in this Circuit and in fact, are contrary to this Circuit's rulings on what the arbitrary and capricious standard actually is.

There is no need to look to other Courts in other Circuits for guidance as to what the Court's role is in reviewing the decision under the arbitrary and capricious standard of review since the law of the First Circuit is clear. Plaintiff has made no argument as to why this Court would even need to look outside the body of law in the First Circuit regarding this standard and her arguments with regard to the applicable standard are unpersuasive. No "red flag" of caution needs to be raised by this Court (Luby) as the First Circuit consistently affords deference to

administrators who are granted the discretion to interpret the terms and conditions of the Plan and to make claims decisions.

II. Plaintiff's Statement of Facts

Plaintiff's in her "Statement of Facts" of facts distorts and misrepresents the record to argue that Prudential's review of her claim for benefits and its decisions with respect to those claims was "arbitrary and capricious." A review of the record shows that the plaintiff's argument is based upon a blatant mischaracterization of the record. Without refuting each of the allegations in plaintiff's Factual statement, Prudential takes this opportunity to address the most egregious of plaintiff's factual arguments.

A. Plaintiff's claim that her position was not sedentary

Plaintiff argues at several points in her factual statement that the record does not support Prudential's determination that her job was sedentary. From this faulty premise plaintiff argues that her job responsibilities required a physical activity level above sedentary. Plaintiff's argument is misguided as the record clearly reflects that plaintiff's position with UVEX was a sedentary desk job. First, the employer statement completed by Boudreau's supervisor David Butler on August 31, 2000, within weeks of the claim being made, states that the plaintiff's position as a "buyer" involves no lifting, carrying, pulling or pushing and states that the job on a daily basis requires 6 hours of sitting and 2 of walking. MAB 0057. Prudential during its evaluation of the claim on April 10, 2002 sought confirmation of the plaintiff's job duties from the employer and was advised that "the job was a phone job. Sitting. Typical office work. No heavy lifting." MAB 0290-0291. Even the "Position Summary & Functions" sheet, upon which plaintiff so heavily relies, supports Prudential's determination that her position was a sedentary desk job. The vast majority of tasks listed are clearly of an administrative or clerical nature i.e.:

proof reading business cards, updating files and reports via computer or manual filing system, entering data into the computer system and placing orders with vendors via phone or mail, verification of check requests orders, etc. The other tasks upon which plaintiff latches, such as "On-site evaluations of vendors" and "Meetings and problem solving" are still clearly within the criteria of sedentary. Finally, Prudential's determination that the position was sedentary is consistent with the Department of Labor's definition which defines sedentary work as follows:

> "(a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, <u>a certain amount of walking and standing is often necessary in carrying out job duties</u>. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §416.967 (emphasis added).

The activities investigation performed by Prudential as part of the review process showed that Plaintiff could sit, walk and stand. MAB 0166- MAB 0177.

<u>B. Plaintiff argues that she has never claimed a disability due to mental or psychological impairment</u>

In her factual statement, plaintiff argues that she has never claimed disability due to any mental impairment and that Prudential acted arbitrarily and capriciously in limiting benefits for this reason. Here again plaintiff's argument is directly contradicted by the record.

In support of her claim, plaintiff's treating psychologist Dr. Paul Aubuchon, wrote to Prudential to advise that plaintiff's chief complaints when she went to see him were for "chronic pain and depression." He further advised Prudential that "[m]edically, she has fibromyalagia and chronic fatigue syndrome and psychologically, she suffers from major depression." These conditions provided the basis for Dr. Aubuchon's conclusion that Boudreau is totally incapable of employment. MAB 0060-0061. Dr. Aubuchon later reported to Prudential that "Pain,

depression, stress, poor concentration and inability to cope with frustration" were the difficulties that led plaintiff to leaving work. MAB 0076.

Moreover, Boudreau's prior counsel and primary physician later sent her to Rhode Island Hospital for a neuropsychological evaluation performed by Dr. Westervelt for use in support of her claim for benefits. MAB 0123- 0129 That report concluded that Boudreau had cognitive difficulties consistent with fatiguing illnesses and noted amongst its findings that plaintiff also had psychological distress, particularly depressive and anxiety symptoms, which "may well contribute or exacerbate her cognitive difficulties." MAB 0128. As these many examples from the record make clear, Ms Boudreau's claimed disability has always included in part a mental, psychoneurotic or personality disorder, and Prudential was correct to evaluate her claim in light of that fact.

C. Plaintiff argues in her factual statement that Prudential sought neuropsychological testing of Boudreau only because it did not like the results of Dr. Gerson's record review

Plaintiff contends that because Dr. Gerson allegedly provided an unfavorable review of Boudreau's record, it sought further neuropsychological testing by Dr. Smith. Plaintiff contends that Prudential then provided Dr. Smith with biased and incomplete information, which presumably tainted his evaluation of the plaintiff. Each of these claims is proven by the record to be patently false.

First, Dr. Gerson in his November 14, 2002 report to Prudential specifically highlighted two problems in the psychological testing performed at Rhode Island Hospital by Dr. Westervelt and submitted by Boudreau in support of her claim. MAB 0136-0138. In fact, the problems were so significant that Dr. Gerson marked that section of his report with three asterisks. Dr. Gerson stated as follows:

> "There are two issues that are problematic in this psych testing under the category of "learning and memory", the psych test indicates that learning and memory testing was not corrected for effort. It was done before the claimant had been apprised of the need to make full effort in testing. Thus the learning and memory performance, which was the least competent result of the testing was NOT done in a valid manner and consideration of retesting her psychologically in this zone would make sense. If a repeat of her psychological testing is done. The psychologist should be apprised of the patient's tendency to not make full effort and that validation testing should be done to assure that malingering and perfect effort are not impacting the final result." MAB 0137.

Consistent with this recommendation, Prudential sought a further neuropsychological evaluation of the plaintiff by Dr. Smith. Plaintiff contends that Prudential, in submitting the matter to Dr. Smith, unfairly characterized a statement she had made in earlier testing and that it misrepresented the results of its surveillance of Ms. Boudreau. Here, again, plaintiff's claims are directly contradicted by the true facts. First, the entire report of neuropsychological testing performed by Dr. Westervelt at Rhode Island Hospital including the full explanation of the "I need to fail this test" comment made by Ms. Boudreau was provided by Prudential to Dr. Smith and reviewed by him. MAB 0193. The full surveillance report conducted by MJM Investigations was also provided to Dr. Smith and reviewed by him. Id. After reviewing the Plaintiff's treatment and testing records and after testing the plaintiff, Dr. Smith concluded that Plaintiff did not have a cognitive dysfunction. He further found that her test results indicated that she has average intellect and her scores on a broad band measure of memory were also within the average range. Dr. Smith also reported that Ms. Boudreau was not disoriented or confused and did not have word finding difficulties and did not have impaired concentration or attention. Dr. Smith finally noted that Ms. Boudreau's scores in some respects reflected that she was not giving the test her best effort as her scores in these areas were lower than individuals with documented severe traumatic brain injuries. MAB 0197; MAB 0204

<u>D. Plaintiff's criticism of Prudential's surveillance</u>

Plaintiff's contention that Prudential's surveillance of the plaintiff revealed that her activities were limited to a "three-minute bicycle ride, a four-minute automobile drive and seven minutes of raking is not only factually incorrect but besides the point. Factually, the record makes clear that over a two day period Ms. Boudreau was observed engaging in prolonged daily chores and activities which were inconsistent with her claim of being unable to perform a sedentary job and which contradicted her subjective reports to the physicians treating her conditions. The plaintiff was observed walking her dog, riding her bike, raking her yard, driving 24 miles, shopping without the aid of a cane or other support, pushing a shopping cart, carrying her purchases and lifting them from the cart into the trunk. Each of these activities is more strenuous than the duties and requirements of her job as a buyer and more significantly, contradicts statements plaintiff has made concerning her physical limitations. These observations are further buttressed by other facts in the record, which include a statement that the plaintiff traveled by car from Rhode Island to Florida MAB 0296 and that she had fallen off of a step stool while hanging a shower curtain. MAB 0441.

Regarding Plaintiff's arguments that with regard to fatigue and sleep deprivation, fibromyalgia and Lyme disease, the decision of Prudential directly contradicted the medical evidence is not indicative that Prudential's decision was arbitrary and capricious. It is well settled that a claim administrator's decision will be upheld if it is reasoned and supported by substantial evidence. Terry v. Bayer, 145 F.3d 28, 41 (1st Cir. 1998). In the First Circuit, substantial evidence is evidence that is reasonably sufficient to support a conclusion. Sullivan v. Raytheon Co., 262 F.3d 41, 51 (1st Cir. 2001). Simply because Prudential came to a conclusion different from that of Boudreau's treating physicians, does not mean that Prudential refused to weigh the evidence or ignored the evidence.

Since Prudential considered the reports and the medical records submitted by Boudreau, there can be no question that Prudential weighed the conflicting evidence as required by Vlass. Vlass, 244 F.3d 27. This consideration by Prudential and Dr. Lumpkins' review, as part of the third and final appeal, of all of the medical records undermines any assertion that Prudential arbitrarily refused to credit Boudreau's reliable evidence, including that of her treating physicians. Colby v. Unumprovident, 328 F.Supp. 2d 186, 191 (D. Mass.2004). Further, a decision adverse to a claimant is not one which is arbitrary and capricious merely because it does not resolve the conflict in favor of the treating physicians' opinions. Sullivan, 262 F.3d at 51. Plaintiff has not argued that substantial evidence did not exist when Prudential made its final decision; Plaintiff has merely argued that Prudential should have come to a different conclusion. The issue of whether substantial evidence existed should not be confused with an analysis of how the decision of Prudential differed from the conclusions of Boudreau's medical providers.

III. Prudential Is Entitled to Change Its Reasoning as New Information is Received

There is no doubt that upon a cursory review of the record that Prudential changed its decision regarding benefits; initially denying Boudreau's claim, awarding her limited periods of benefits and then discontinuing her claim. As the appeal process progressed, Prudential was presented with new information by Boudreau. Plaintiff's implication that Prudential's decision was arbitrary and capricious because Prudential changed its approach or reasoning for its decision subverts the very purpose of the administrative appeals process which is to allow a claimant to submit additional information for review and consideration of the Plan Administrator. In the instant case, this argument is a "lose-lose" type of argument against Prudential; meaning if Prudential had not reviewed the new information and had never put

Boudreau back on benefits as it did during the appeals process, Plaintiff would have argued that Prudential's failure to consider the information before it was arbitrary and capricious.

Regardless of the intermediate decisions made by Prudential, the focus of this Court's review must be on the final decision of Prudential. Orndorf v. Paul Revere Life Insurance Company, 404 F.3d 510, (D. Mass. 2005). Reviewing each intermediate decision frustrates the purpose of the administrative appeals process and ERISA's exhaustion requirement.

IV. Amendment of the Record to Include the August 7th Letter

The administrative record, as provided to this Court and agreed upon by Plaintiff consisted of Prudential's entire file on Plaintiff's claim for disability benefits. The letter at issue was not contained in this claims file nor has Plaintiff pointed to any evidence to suggest otherwise. Moreover, Plaintiff has pointed to no evidence which suggests that Mr. Caruso, the author of the letter, had access to all of the information contained in the LTD file prior to making his decision with regard to life insurance.

While the letter may analyze the policy provisions and the medical records of the claimant, the letter is not indicative that the process of Prudential in making a determination on group life insurance is related to the instant claim. It is important to note that the SOAP notes which have been produced as part of the record, MAB 0466- MAB 0503, make no mention of Mr. Caruso or the August 7th, 2003 letter. Also, the event log makes no notation for Mr. Caruso's decision on the group life insurance issue whereas the event log notes every other decision and action taken by Prudential relating to Boudreau's claim for long term disability benefits. MAB 0507- MAB 0508.

While this letter may have been available to Prudential, the letter was not considered part of the file nor does this letter assist the Court in determining whether the decision of Prudential

was arbitrary and capricious since there is nothing to suggest that this letter was "before" Prudential with regard to the claim for long term disability benefits. However, even with the inclusion of the letter, the focus of this Court's review does not change. The focus of this Court's review ultimately will be on the final decision of Prudential, making the letter irrelevant as it is not a final decision on Plaintiff's claim for long term disability benefits. Terry v Bayer, 145 F.3d 28, 36 (1st Cir. 1998). The focus of this judicial review should be on the final decision made by Prudential in denying Boudreau's claim for long term disability benefits. Orndorf v. Paul Revere Life Insurance Company, 404 F.3d 510, (D. Mass. 2005).

V. The Medical Evidence

Plaintiff has argued that there is no dispute that Plaintiff was disabled and further argues that Prudential's employees and representatives admitted that Boudreau suffered from objective evidence of several disorders and that she was totally disabled as a result. Plaintiff has made this argument to distinguish the instant case from the cases of Greene v. Met Life, and Coleman v. Met Life. In Prudential's final decision on Boudreau's claim, MAB 0273- MAB 0275, Prudential clearly acknowledged that Boudreau suffered from various medical conditions and that there was objective evidence to support her diagnoses. MAB 0274- MAB 0275. However, simply because someone suffers from a particular condition does not mean that the person is totally disabled. Moreover, Prudential's acknowledgement of the various conditions and diagnoses stressed the thoroughness of Prudential's review of the medical evidence prior to its final determination. The statements in the letter may be admissions as to the fact that Boudreau suffered from certain conditions and that there was objective evidence to support the various diagnoses, however, these statements cannot be construed as admissions of total disability as the Plaintiff has suggested.

After receiving new medical documentation from Boudreau (MAB 0274) concerning the diagnosis of Lyme disease, agammaglobulineamia, and hypogammaglobulimia, Prudential had the medical records again reviewed by Dr. Lumpkins to see if the new findings changes Dr. Lumpkins prior opinion regarding Boudreau's medical condition and work capacity. MAB 0260- MAN 0269, MAB 0273- MAB 0275. Dr. Lumpkins opined that there was no change to the prior recommended physical impairments or limitations based on her review of the new medicals. MAB 0260- MAN 0269, MAB 0273- MAB 0275. Dr. Lumpkins did opine that the diagnosis of hypogammaglobulimia was the only new diagnosis with objective support but that diagnosis had not been demonstrated to cause impairment of sufficient severity to require physical limitations. MAB 0260- MAN 0269, MAB 0273- MAB 0275. The statements of Dr. Lumpkins are not admissions of a Prudential employee or representative, however, even if they were, the statements do not admit that Boudreau is totally disabled.

Plaintiff's attempt to distinguish the instant matter from the cases of Greene and Coleman is a weak one for the reasons listed above and due to the express statements by Prudential and Dr. Lumpkins that Boudreau was not totally disabled. Like Met Life in Greene and Coleman, Prudential reviewed the medical records provided to it, had the records sent out for an external medical records review and made a decision that was adverse to the Plaintiff and somewhat contradictory to what the treating physicians opined. However, it is well-settled that even though there is disagreement between a claimant's treating physicians and the outside medical record reviewers, this disagreement is not necessarily arbitrary and capricious. Coleman v. Met Life, 919 F. Supp. 573, 582 (USDC-RI, 1996) *citing* Jestings v. New England Telephone and Telegraph Co., 757 F.2d 8, 9 (1st Cir. 1985).

VI. No Need for Social Security Principles or a Smokescreen

Plaintiff has argued that Prudential has used ERISA a smokescreen to shield itself from legitimate claims and that this Court should use Social Security principles to evaluate Prudential's decision. Again, there is no case law cited by Plaintiff which suggests that Rhode Island or the First Circuit has adopted the approach of applying Social Security principles to ERISA cases. Also, Plaintiff has failed to make any argument as to why this Court should resort to using Social Security principles to evaluate this case where the First Circuit has a copious body of law with regard to ERISA cases. There is no void to fill here in Rhode Island and in the First Circuit with regard to ERISA case law.

Plaintiff does not cite one case in this Circuit which stands for the proposition that Social Security principles should be applied to the instant. This Court should not be persuaded by the Plaintiff's citation to the case of Pelletier v. Secretary of Health, Education and Welfare, since this case has nothing to do with ERISA and involves a denial of Social Security benefits. Pelletier, 525 F.2d 158 (1st Cir. 1975).[3] Pelletier does not support Plaintiff's argument that Social Security principles should apply to ERISA cases and ironically, Pelletier was decided when ERISA was in its infancy stage, having been passed by Congress less than a year prior in 1974.

There is no dispute that ERISA, like Social Security was intended to be a remedial statute. However, under ERISA, employers and insurers are entitled to create policy provisions and definitions of total disability, within the confines of ERISA, and are entitled to make decisions pursuant to those provisions and definitions. In this case, the very process of appeals that Boudreau went through indicates that she had a full and fair review of her claim as she was

initially denied benefits and then was granted benefits for a limited period of time. If Prudential was using an "ERISA smokescreen," it clearly would have refused to grant benefits to Boudreau regardless of the medical information provided and would not have granted benefits to Boudreau at any time. Plaintiff has failed to point to any evidence to suggest that Prudential failed to review or ignored evidence. Thus, claiming that Prudential's review, analysis and handling of Boudreau's claim was erroneous, unreasonable and repugnant to public policy is merely a desperate, last ditch attempt to persuade this Court that a full and fair review did not occur in light of clear evidence to the contrary.

Conclusion

For the reasons outlined and herein and in Defendants' Motion for Summary Judgment, Bacou USA, Inc. and the Prudential Insurance Company of America respectfully request that this honorable Court deny Plaintiff's Motion for Summary Judgment and grant Prudential's Motion for Summary Judgment.

Respectfully submitted,
BACOU USA, INC. and
THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
By its attorneys,

William T. Bogaert /by MJP

William T. Bogaert,
*Admitted Pro Hac Vice*
Carey L. Bertrand
*Admitted Pro Hac Vice*
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

(. . . continued)
[3] Plaintiff's cite to this case is incorrect as it lists the date of the case as 1995.

Local Counsel:

Michael J. Pisaturo
The Law Office of Michael J. Pisaturo, PC
1312 Atwood Avenue
Johnston, RI 02919
401-464-8111
401-942-4928 Fax

**CERTIFICATE OF SERVICE**

I, Michael J. Pisaturo, hereby certify that a true copy of the foregoing document was served upon all counsel of record by forwarding a copy of the same, first class mail, postage prepaid on this 28th day of October 2005 to:

Anthony J. Gianfrancesco, Esq.
Baluch, Gianfrancesco, Mathieu & Szerlag
155 South Main Street
Suite 101
Providence, RI 02903

Michael J. Pisaturo